**Julius C. RANDOLPH, Appellant,**

v.

**Anita Arnold TERRELL, Appellee.**

**No. 12-87-0075-CV.**

Court of Appeals of Texas,
Tyler.

Dec. 11, 1987.

Rehearing Denied Feb. 25, 1988.

---

Paul Branch, Kilgore, for appellant.

Douglas D. Hearne, Douglas D. Hearne & Associates, Austin, for appellee.

COLLEY, Justice.

This is a suit by plaintiff/appellant Julius C. Randolph against defendant/appellee Anita Arnold Terrell to remove a cloud on the title to Randolph's undivided 96–acre interest in the surface estate in 216 acres in Rusk County.

The trial court, following a bench trial, signed a take-nothing judgment against Randolph. We affirm.

The sole issue presented is whether an option agreement contained in a deed from Terrell to Randolph constitutes an unreasonable promissory restraint against alienation and is thus void.

The record reveals that on April 2, 1959, Anita Arnold Terrell and her now deceased husband, Charles L. Terrell, conveyed the above-mentioned lands to Julius C. Randolph and his former (divorced) wife, Eunice Terrell Randolph. The deed contains a clause reading:

It is further agreed and stipulated among the parties to this act, that the said vendors, Chester L. Terrell and Anita Arnold Terrell, as ADDITIONAL CONSIDERATION, shall have the first option to re-purchase from the vendees herein, Julius C. "Buddy" Randolph and Eunice Terrell Randolph, all of the hereinbefore described property, if and when the said vendees should desire to sell, and it is further agreed that the said vendors herein shall have the option of re-purchasing the property herein at the same and hereinbefore mentioned price of TWO THOUSAND TWO HUNDRED TWENTY AND NO/100 ($2,220.00) DOLLARS, should the vendees herein wish to sell, plus, of course, an additional fair amount for any improvements made on the said property by the vendees herein.

The rule against restraints on alienation originated in the common law of England. The rule was developed to create "a policy in favor of the free alienability of land … [or if not, it had] the effect of enhancing the alienability of land." *Restatement (Second) of Property* (Donative Transfers) Volume 1, intro. n. p. 142 (1981).

A modern example of the application of the classic rule is found in *O'Connor v. Thetford,* 174 S.W. 680 (Tex.Civ.App.—San Antonio 1915, writ ref'd). There the court wrote:

The tying up of property was regarded by the common law as an evil, and in order to prevent it two doctrines were established, one that all interest [in land] should be alienable, … it is well settled that a restraint upon the power of alienation when incorporated in a deed … otherwise conveying a *fee-simple title* is void.

In *O'Connor,* the court was dealing with a deed containing a direct restraint on alienation (an outright prohibition against alienation). The *O'Connor* court cited to authorities denouncing as void restraint on alienation of a fee-simple title for a limited period of time. One of the cases cited was *Seay v. Cockrell,* 102 Tex. 280, 115 S.W. 1160 (1909). In *Seay,* the court held void a provision which in effect forbade devisees from selling, during their lifetime, the interest in certain real estate devised them under a will. In *Pritchett v. Badgett,* 257 S.W.2d 776 (Tex.Civ.App.—El Paso 1953, writ ref'd), Badgett, a devisee under a will, brought suit seeking to void a provision prohibiting his right to sell or mortgage the lands devised to him for a period of "twenty years unless joined by the executors."

The El Paso court affirmed the trial court judgment in favor of Badgett holding that under the will a fee-simple title to the land was devised to Badgett and the restraint imposed was illegal and void, citing *Seay*, 115 S.W. 1160.

These cases above involve direct restraints on alienation and we note them to demonstrate the distinction between direct restraints and indirect restraints on alienation. In the instant case, we are confronted with an indirect restraint on alienation in the form of an option.

The option in question constitutes a promissory preemptory restraint on alienation under *Restatement (Second) of Property* § 4.4 (1981).[1] Utilizing the Restatement analysis, the restraint stands or falls under the test provided by section 4.2(3); that is, the restraint here is valid if it is reasonable after consideration of the factors enumerated in section 4.2(3)(a)–(f), to wit:

(a) The restraint is limited in duration;

(b) The restraint is limited to allow a substantial variety of types of transfers to be employed;

(c) The restraint is limited as to the number of persons to whom transfer is prohibited.

(d) The restraint is such that it tends to increase the value of the property involved.

(e) The restraint is imposed upon an interest that is not otherwise readily marketable; or

(f) The restraint is imposed upon property that is not readily marketable.

In *Mattern v. Herzog*, 367 S.W.2d 312 (Tex.1963), the Court upheld the validity of an option to purchase incorporated in a devise under a will, which reads:

The remainder of all our real estate, wherever located or situated, which we may die seized and possessed of we give and bequeath to our beloved children, Chris Mattern, Jack J. Mattern, Magadeline Herzog, Paul J. Mattern, Barbara Mock, Reginia Gostslig, Johnnie Mattern, Agnes Pustka and Monika Mattern to share and share alike in the division thereof; *however, this bequest is made to our said named children with the provision that our son Chris Mattern shall have the right to purchase from each of the other children their interest in said real estate for the sum of $45.00 per acre, and in making such purchase from said other children our said son Chris Mattern shall be entitled to deduct from the price of $45.00 per acre such sums of money as he may have advanced to us during our lifetimes.* (Emphasis theirs.)

In so doing, the High Court reasoned that unless the language of the option "compel[s] a construction that the parties intended that the time element should be unlimited, the court will not construe an option contract ... granting an option to run for an indefinite time and thus destroy the validity of the option provision." 367 S.W.2d at 319. In *Mattern*, as here, there was no prohibition against a conveyance by the person holding title. The court observed that the validity of the restraint on alienation imposed by the option must be tested by consideration of "the reasonableness of the time limit of the option...." 367 S.W.2d at 320. In addition, the court wrote, "[b]efore the option may be stricken it must appear that it bears some relationship to the evil which the rules governing undesirable restraints are designed to prevent." The court also noted that "[t]he present option involved, *limited as it is to a reasonable period of time*,[2] *is not a socially undesirable devise.* We hold that it is valid and enforceable." (Emphasis ours.)

The court alludes to the classifications of restraints set forth in the *Restatement of*

---

1. All references to sections are to the *Restatement (Second) of Property* (Donative Transfers) unless otherwise indicated.

2. The court concluded from the language of the will and the attending circumstances that the testator "intended that the option ... should be exercised within a reasonable time." *Id.* at 318.

*the Law of Property,* § 404 (1944)[3] and concludes that "[o]ptions attached to conveyances or devises whereby one party receives the property subject to the right of another to purchase the same do not fit into the usual classification of restraints upon alienation." 367 S.W.2d at 319. The court then emphatically states that it would not "mechanically apply the rule applicable to *disabling restraints* and thus inhibit the employment of desirable contractual and testamentary provisions and unnecessarily circumscribe the freedom of contract and the power of testamentary disposition." 367 S.W.2d at 320. (Emphasis ours.)

The Restatement Rule, section 4.4, reads: A provision in a donative transfer of an interest in property to the effect that the interest is subject to a right of first refusal in a designated person in the event the interest is offered for sale is not a restraint on alienation, as that term is used in this Restatement, if the terms of the right of first refusal are reasonable in regard to both the price that the designated person must pay, and the time allowed for the exercise of the right of first refusal. If the preemptive provision does not meet the above conditions, it is a disabling, a forfeiture, or a promissory restraint on alienation and is to be judged by the rules applicable to these restraints.

In our view, the option or right of first refusal provided by the deed at hand was not reasonable in at least two respects. First, it provided that the grantors personally could repurchase the lands *at any time during their lifetimes* for the same consideration paid to them in 1959 by the grantee and secondly, no limit was placed on the time allowed for the actual exercise of the option. Thus under section 4.4, the option agreement constituted a restraint on alienation of the lands involved, and its validity must be determined by the rules applicable to it as a disabling, forfeiture or promissory restraint on alienation, as the case may be.

■ There is no question but that the option in this case is a promissory restraint. Therefore, its validity under the restatement rules[4] should be determined under section 4.2(3) quoted above, provided that rule is consistent with the decision in *Mattern.* Since we are of the opinion that the *analysis* of the restatement rule is wholly consistent with *Mattern's* reasoning, we adopt and apply the restatement rule[5] in this case.

As we read the option provision, it is unambiguous. No evidence was introduced at trial to prove the circumstances surrounding the execution and delivery of the deed. Hence, we presume that the deed was executed and delivered as a result of an arms length commercial transaction. We construe the option to grant to the grantors[6] a right during their respective lifetimes to repurchase the lands, if offered for sale by the *named* grantees during their respective lifetimes for a fixed price as to the land itself, and for the market value of any improvements placed thereon by the grantees at the time of the exercise of the option.

Having so construed the option contract, we must next decide the troublesome policy question of whether the restraint imposed by the agreement is an unreasonable one. The reasonableness of the restraint must be determined in the light of all the attendant circumstances. Comment d. of section 4.4 reads in part: "[p]reemptive provisions that are restraints on alienation are not invalid per se.... Such provisions are therefore subject to the rule of section 4.2(3) and may be found reasonable if one or more of the factors enumerated in subsection (3) are present."

■ The option retained by the vendors was to last only for their lifetimes, a suffi-

---

**3.** The section has been entirely rewritten. *See Restatement (Second) of Property* § 3.1–3.4 (1981).

**4.** See section 4.3 which reads, "A promissory restraint imposed in a donative transfer on an interest in property is valid if, and only if, a comparable forfeiture restraint would be valid under § 4.2."

**5.** Section 4.2(3)(a)–(f).

**6.** Chester L. Terrell died testate before trial.

ciently limited duration. The sale involved the transfer of an undivided interest in realty between members of the same family creating a cotenancy between them. The vendees plainly agreed that if they sold their undivided interest, the vendors would have the right to repurchase that interest at the same price, a price, it is reasonable to assume, that took into consideration the restraint on alienation imposed by the option agreement. At the death of the surviving grantor the option will expire and the grantee will have full power to convey the interest to anyone. Considering its limited duration and the other circumstances surrounding the transfer, the restraint is not of the character requiring the court to fundamentally and unequally alter the parties' original bargain. On balance, we conclude that the preemptive provision present here is not so restrictive or unreasonable as to invoke the operation of the doctrine against restraints on alienation. The points are overruled.

The judgment is affirmed.